Good afternoon. Illinois Public Court First District Court is now in session. The Honorable Justice Sanjay T. Taylor presiding. Case number 24-1002, Danielle Tangorra v. M & K Automotive, Inc. Good afternoon. My name is Sanjay Taylor. I'm the presiding judge of the 1st of the 6th division of the 1st District Appellate Court, and I'm joined this afternoon by my colleagues, Justice Michael Hyman and Justice Celia Gamrat. If I can have counsel introduce themselves, and counsel for appellant of your 20 minutes, let me know how much of that you would like to reserve for rebuttal. So counsel for appellant. Good afternoon, Your Honor. Good afternoon, members of the panel. My name is Dmitry Filofanov. I am representing the points of appellant here, and I don't know what I need to reserve, you know, five minutes maybe. Okay, thank you. Thank you. Counsel for appellate. Good afternoon, Your Honor. Lawrence Lulich on behalf of Defendant Appellate M & K Automotive. Okay, thank you. Okay, Mr. Filofanov, we'll begin with you. Thank you, Your Honor. Members of the panel, to my mind, this case raises two issues, and I think I addressed them at some length in the briefs. And those issues are the stating a claim under newly enacted Section 2L of the Consumer Fraud Act, and the subsidiary issue that is before you is specific to this case, and that is the failure of defendant to abide by, to participate in arbitration agreement. Now, of course, the meat of the case is Section 2L, admittedly, and the issue before you is whether or not they're selling the car as is, disclaiming all warranties, and repeating it over and over and over, repeats, violates Section 2L, which we contend it does, and the subsidiary issue of that is what elements one must allege in making that claim. Let me ask a question. Let me ask a question. Yes, sir. Let's take your first count. Yes, what you're talking about. Where do you find any support in the law with regard to a claim can be made under 2L with, and not under Section 10? Because as I read all the cases, including the ones that have talked about 2L, they say that in order to have a private right of action, you must abide by Section 10. Now, 2L gives you a claim as long as you have met the four requirements of Section 10, and the defendant says, well, wait a minute, at least as to the big one being damages, what do you say to that? Well, I say to that, that that is not the reading of Section 2L, which should be adapted, because it is the newly enacted, well, but what I'm saying to you is, do you have any, I understand you disagree with it, but you still need to give us a basis, and we can't just say, well, that sounds good, when other cases, and it's been pretty uniform for years, that you need to come within Section 10 to make a Consumer Fraud Act claim. The Attorney General is different, but here for you, let me put the question a different way. If we rule that you must have damages, actual damages under Section 10 for your Account 1, do you lose? Is there any way you can win under that? If we say you need to have actual damages? Yeah, well, my answer to that is, well, what about Section 2B and 2C? The cases that I read, and the cases that I quoted, indicate that when you have a kind of a sui generis claim, which has nothing to do with the consumer fraud in the metaphysical sense, it has nothing to do with misrepresentation or emission concealment suppression of material fact, then those, those claims under 2B and 2C, which are, you know, the homes, home sales, and failure to return down payment when financing is not approved in car cases, they go out of the, out of the window as well. The legislature is entitled in a brand new statute, which has nothing to do with consumer fraud as such, it's a warranty statute. Legislature is entitled to devise its own remedy, which is waiting on the transaction. Now, of course, Section 12 also has a separate component to it, which is the general warranty provision. And there, the issue is very simple. They don't fix the car, they owe them money. But they also put a specific provision, which is a carrot and stick provision to converse compliance with the law, which is, you don't do disclosures, you get the sale canceled. I don't think Section 10 enters into this equation, because the Section 12 is a standalone provision. And I don't think, Your Honor, that there are any cases, not that I'm aware of, maybe you are, but I'm not, that say that Section 10 specifically is joined with Section 12 in that context. I'm not aware of any cases like that. So let me ask you. Yes. Yes. I'm sorry. Go ahead. I'm sorry. So to answer Justice Hyman's question, if we disagree with you and find Section 10A, which says any person who suffers actual damage as a result of any violation of this act may bring an action against such person. In other words, to have standing for a violation under the act, you need to suffer actual damages. So if we read it that way, does your client allege any actual damage with proximate cause? Yes. Well, I think I addressed that issue somewhat in my initial brief. And that is, well, the actual damages, other than the voiding of the transaction, the actual damages of this, she was deprived of her rights. It took time. It took effort. Her car, without a warranty, is worth less than a car with a warranty. So there is a number of damages that I alleged. And I do believe I have in my initial brief a long section. Okay. Let me back up. This warranty is very, very limited. It's 15 days, 500 miles. It covers a specific component. Yes. Was that, is there any allegation that that component was defective in that 15 day, 500 mile period? No. Thank you. And then I'd like to follow up the other side of the coin. If we determined that you are not required to allege damages for a violation of section 2L, then is it your position that your client can seek rescission of the contract at any time up to three years, which is a limitation period that applies here? Yes, that is a question that comes up all the time, Justice Taylor, and that I actually have an answer to that because it came up and I had to think about it. So first of all, I would like to point out that we're not talking rescission, and I want to emphasize this because rescission connotes certain common law principles, and they do not apply here. What the statute says is that we're entitled to avoid the transaction. Now, in effect, it's the same thing, but the legal principles that apply here are different because rescission is an equitable remedy and the courts are supposed to consider certain equities, but here we have a statutory right. But to answer your question directly, yes, we do have a statute of limitations. It does allow us three years. It, of course, strikes a lot of people as totally ridiculous to allow a person to drive the car for 100,000 miles and then say, aha, you violated the disclosure requirement, I'm undoing the deal, and therefore I'm entitled to all of my money back. That depends on who the lawyer on the other side is, because if I were a defense lawyer, the simple answer to your question would be, well, sure, yeah, the statute of limitations is three years, but we have a right to a set off. You put 100,000 miles on the car, yeah, sure, you're entitled to avoid the transaction, but you owe us 100,000 miles, and that money could far exceed the price of the car. But that's assuming that there's a contract for sale, and you're saying that the contract is void, so what would the basis of set up be, some equitable principle? Well, I think this is kind of a chicken and egg situation. I think there was a contract. Clearly, there was a contract. Right, but you're saying it's void. Void, oh, no, no, I'm not saying it's void. The statute is voidable, yeah. Right, but that's what you're seeking to do here, right? You're seeking to void the contract. Yeah, it's voidable adoption of the plaintiff. I think that the defendant in this case would be entitled to assert set off, because it's inequitable, arguably, to allow voiding of contract when he retains the benefit, when he got some benefit out of the transaction. Another very inventive theory that was asserted in that situation was latches. For example, when you have, and I happened to research that issue just recently, when there was a three-year period of limitations, if they assert the claim, you know, two years and 11 months after, and the car has 100,000 miles in it, because they drove the heck out of it, well, there is a substantial change of conditions and equitable principles may come into effect. It is true that equity follows the law, but the law of latches, as I understand it, coming from the Supreme Court, is that it's not an absolute bar. So you have less than five minutes left. If you want to turn to your second argument about the arbitration clause, because we'd like to hear about that as well. Oh, okay. Well, that's an interesting one. I am aware that normally contracts are not to be transformed miraculously into consumer product. And I looked very carefully into that. But here's, we have something different. They were not registered with the AAA, which means that they never intended to participate in arbitration. Tell us about that. There's some requirement to register with the AAA? It's a way for them to get extra bucks. They make them register. They also check their arbitration clauses for nominal compliance with the due process protocol, because AAA, actually, they went all the way to be completely above board. They brought in top-notch legal talent. They promulgated consumer due process protocol, which is like 50 pages of stuff with explanations. The arbitration clauses cannot not comply with that. There are certain minimal due process requirements, which they very strictly adhere to. And so if the arbitration clause, which designates the AAA, does not comply with those, they send an Instagram to the defendant and say, your clause does not comply. You take out this and this provisions, and then you can proceed, or we are not going to administer it. It is within our power to deny it. And the contract selects AAA, does it also select any other arbitrator? They can, if they want to. They can say AAA, or BBB, or GEMS, or something else. In this particular case, it was, I think, only AAA. So it gives the dealer the option of selecting an arbitrator? Nothing prevents a dealer from selecting another arbitrator. But once they select the AAA, they kind of impliedly agree to abide by their rules. If they don't, they get kicked out. So your theory is that the dealer had no intention of complying, or of arbitrating, because it had not even registered with the arbitrator that it identified in the contract. Yes, and when it was brought to their attention, and of course they didn't pay, the part of the deal was they paid the filing fees, which they did not. So let me ask you, you're alleging that they weren't registered with AAA at the time their client signed this contract. But as I read your complaint, AAA refused to administer the arbitration, and requested that defendant remove its name. And that was not until 2023, after you complained that they didn't pay the fee. So what is pled with facts that would that at the time your client contracted with defendant, that they were not in good standing with AAA? Oh, it's in the letters that the AAA... What happens, Your Honor, is that when the arbitration is sent out, it takes them about three months to wake up, but they inevitably do. And then they, you know, verify that the clause is compliant with their provisions, and they check whether the people are registered. There are certain repeat players where there's not a problem. And so one of the attachments to the complaint is, I attached all of the letters, as a matter of fact, because I knew you would ask that question. And so one of the letters say, well, you are not registered. You have to pay this much to be registered to be in compliance. And I also believe, I'm not sure, but I believe they also said previously they didn't comply with their financial obligations. So they were completely not compliant and not intending. They knew about it from the previous instances, and they had no intention of participating in arbitration. They use it as a way to fend off plaintiffs who file cases. Let me ask a question. I'm trying to understand the facts. Okay. Your client wanted to arbitrate. Okay. So is that right? She didn't want to, but I always do, because there's no way... So you want to arbitrate, and you have the provision in the agreement. Yes. Who picked the arbitrator? Oh, you mean the actual arbitrator? Oh, no, the company. Oh, the company. It was in the contract which came from the defendant. They specifically designated AAA. So in this case, that's what I'm getting at. So your allegation is that in this case, the defendant designated AAA, and though you were following the contract, when you contacted AAA, and then AAA turns around and says, nope, we're not doing this, and they didn't pay the money. And then you had to file a lawsuit, and you're saying your damages, you have actual damages, because you had to pay for the lawsuit, where you had this other provision where they would pay up to $5,000. And that is not something that they actually abide by, and you want to get discovery because you don't have all the other agreements that they have with people where they've had AAA, and you're trying to get the facts regarding AAA's relationship with the defendant. Is that right? I didn't quite get to the discovery point. I know you did, but that's what... You're doing it on information and belief. Yeah. But you don't have those facts. That's my... No, I do not. My argument, Your Honor, is that given the fact that it was a form document, and given the fact that they were bad, and they were kicked out of AAA previously, we can kind of infer that they did it to other people who may have not came to court. And of course, my point that I was trying to make there is that, as I understand the Consumer Fraud Act, and this dilemma of having contracts miraculously transform into fraud, which they do not, but there is a principle that a systematic breach of contract, intentional, constitutes a Consumer Fraud Violation. I brought that up to demonstrate that it is not... So your theory, you haven't identified another instance in your complaint where the dealer failed to comply with an arbitration demand, but your theory is that one can reasonably infer it from the facts that you've alleged in the complaint, i.e., or specifically to it, that the defendant was, I think you said, thrown out or kicked out of AAA, or never registered with AAA in the first place. That's your theory, right? My theory is that, and also based on the fact, and it comes from federal law, like FTCPA, collection of practices, when you have a form document, you can kind of infer that given it's a form document, as I recall, it was on page five of their contract. It's a form document that they use, presumably, in every transaction. That means that they did it to more than one person, and that takes us out of the mere breach of contract. Okay. Any more questions from the panel before I turn to the Appellee's Council? Okay. Thank you. Mr. Lulich. I just want to address one thing going into the arbitration agreement. A plaintiff appellant did not allege that M&K, the appellee, had an obligation to pay her filing fee, and the trial court specifically found that the letter from AAA expressly stated that the in this case, the plaintiff appellee, or appellant, is to pay the $200. That's what the complaint, or the contract states that the dealer has to pay the consumer's filing fee, right? And that contract is attached to the complaint? That is correct, but there is no pleading. There's no pleading, and the plaintiff does not allege that there was an obligation to pay the filing fee. Wait, wait, wait. I don't understand. I'm trying to understand. My reading of the language is that all the costs and fees, up to $5,000, will be paid by your client. Am I correct? That's correct. Okay, so that was your agreement between the two of you. So irrespective of what AAA says, you have to pay that fee, both sides. You said you take over their fee. And they have to plead that, in which they have not pleaded. They've said you wouldn't pay anything. In fact, you wouldn't pay a dime, and it was all terminated. So what else do they need to plead? They pled that this claim between AAA was terminated. You didn't pay a dime. They need to allege that there is an obligation. They just can't attach a contract and saying everything in this contract is going to be your obligation. They have to actually plead it. They refer to the language in the contract. It's in the contract. They attach the contract. It's a part of the contract. That's why you attach the contract. And that's why Justice Taylor asked that question. So it's in the complaint. The complaint is part of the contract. It's part of the complaint. And it says that you will pay up to $5,000. So until they get over $5,000, it's on your dime. And they said you didn't pay it. And it was terminated. There was never an arbitration. And that you're doing this in a form contract, and they assume because it's a form contract that you've done it over and over again, and they need that discovery. And they've had damages because they've had to go to court instead of using this provision that you agreed to. It's your writing. You drafted it. Not you personally, but it was something drafted by the defendant. I understand. I'd like to just address one other point, is that opposing counsel and continual abuse of this process, he doesn't plead it, and he doesn't prove it. Well, he doesn't have to prove it. This is called a claim. You understand? I understand. We're not into proof. We're into whether he's made a claim. And that right now, as we just discussed with him, he has presented why he believes there is a claim, and that he'll need to get discovery in order to pursue it a little further. But you have the documents, and he's inferring things because that's all he has. And it's not beyond the scope of possibilities that he might be right. And whether he wins the claim or not, we don't know. It's just, it's a claim right now. It was dismissed on the pleading, 615. So if he has damages, it seems to me that he possibly comes under Section 10, in which case, you know, the case would go ahead on that claim. Why not? The other requisite element is that they've never alleged an intent for the plaintiff to rely on any alleged deceptive practice. They've never pledged. Wait, wait, wait, wait, wait, wait, wait, wait. What are you talking about? Which claim are you talking about? We're talking about count one. Oh, no, you're not going to count one. Okay. Okay. They don't allege that there was a deceptive practice. They don't allege that there was an intent for the plaintiff to rely on that. Excuse me. Do they need to allege those things? We're talking about the Consumer Fraud Act. There is a statutory violation that's been alleged, and the statute itself says if there's a violation, it is a deceptive practice. The statute says it, right? It's a non-lawful practice. So do they even need to allege intent or reliance, as they would in some common law fraud claim? I believe that they do. Should we get there? No, no, no. The claim would be under Section 10. So there's four elements of Section 10. You agree? Yes. Okay. Let me read it. Deceptive conduct. Do they allege a deceptive conduct? They don't articulate deceptive conduct. They don't? Well, it seems to me that's very clearly stated by saying that you've provided a, I mean, that you're taking it as is, and then you have the other, the warranty that the state has required you to have. You have both. So you giveth and you taketh, and that is itself deceptive. That's the conduct. I mean, I can explain it to you, but you don't think that's their claim. Now, whether it is or isn't, I don't know. It's a claim. But don't you think that that's what they're saying? Believe they're saying there's ambiguity and that ambiguity is deceptive? Yes, because you giveth and you taketh. So you have it both ways. And they're saying that that's deceptive. That's the conduct. So let's go to number two. The defendant intended that they rely on that conduct, which in this case, they say they did. They relied on the arbitration. The deception occurred in the course of conduct involving a trade or commerce. I don't think that's an issue. And then the question of damages, which we talked about with them. And in your position on the damages on count one? As we said in our brief, there's no damages alleged. And the fact that she has expenses in maintaining litigation, those aren't the damages envisioned in the statute. Well, now you're going to count one or count two? That's count one. Okay. So I'll be happy to answer any questions. My brief sets it out fairly succinctly. What is your response to Mr. Fiafano's argument about set off? So I questioned him about assuming that damages are not required to be assumed for sake of argument. He then has up to three years to rescind the contract and that the dealer would then be able to seek a sort of set off claim for wear and tear and damage and that sort of thing. What's your response to that? I think that's impermissibly vague and it's an unworkable situation. And the reason for that statement is there is a statutory mandatory implied warranty and we don't have any alleged defect. We don't have any alleged violation of the warranty. We don't have any allegation that there was a fitness for that, that it was unfit as a vehicle within the warranty period. And I think the set off of latches or the set off is not an adequate or envisioned by any of the statutory language. Oh, I'm sorry. How do you defend your client having this sticker on their vehicles when the attorney general has made it very, very clear? His sticker no longer applies. Here's a sample of what she should be doing. According to plaintiff's counsel, this is happening. The S is no warranty and the inclusion of the, in bold and in larger 10 point print, the mandatory implied warranty is conspicuous and it's present. And the plaintiff in this case initialed it that she had read it. What we're saying is- Sure, but it also says that we have something in the contract that says the sticker takes precedent over anything else. So we get all that. Are you double downing saying what your client has done is okay and it's not a violation of the statute? I'm not saying that at all, but I'm not also saying that it is a violation of the statute. Why isn't it a violation of the statute when the attorney general has a different form that makes it very, by looking at it, you can tell exactly what's going on. Here you use the old form. And as the plaintiff says it's contradictory and what is somebody to think? So this is something your client did and it's very confusing. People won't know is it as is or does the warranty apply or are you able to pick and choose? Now, don't you have to buy by that warranty that the state 15 days and 500 miles, whatever comes first, you have to buy by that. Absolutely. So how can you say that, oh, well, we abide by that as is? That there's no additional warranty above the language- Wait, where is that set in the agreement? No additional warranty? You don't have those words? You are correct on that. Okay. Let me get back to the arbitration clause. I'd like you to address the argument that Mr. Giafanov has made about reasonable inferences that can be drawn from the complaint. And his theory, as I understand it, is that it's a form agreement. One can reasonably infer that the arbitration clause is contained in other contracts that the dealer enters into with consumers. And simply based on practice, that's not an unreasonable inference. But more importantly, while he hasn't alleged another instance of the dealer not abiding by an arbitration request, he has alleged that the dealer is not even registered with the AAA, the very arbitrating body that the contract selects for the resolution of disputes. And based on that, a reasonable inference can be drawn that the dealer had no intention of abiding by its obligations to arbitrate. Would you respond to that argument? I have difficulty responding to that because it's based on a third party's conjecture. And it's based on speculation. This is a situation where discovery could have been conducted before. They could have submitted a 191B affidavit. All of those avenues were available. And they elected not to. And they filed their verified complaint on two different occasions. Are you suggesting that the plaintiff should have sought discovery before it was required to respond to their motion to dismiss? Which is permissible, but it's not invoked very often, and for good reason. But is that what you're suggesting he should have done? I'm saying if he wants to raise the argument that he's raised in the appellate court, he certainly should have. Well, but so he has alleged though, right, in his complaint that the dealer wasn't even with the AAA. Is that right? Correct. Good. And your argument is that's not sufficient to form the basis of a consumer fraud act. That's your argument, right? Correct. Okay. Anything else, Mr. Roberts? Yeah, I would just like to ask you about your request for sanctions. Having heard the questions that we've asked, what is your reaction to the allegations and the accusations that you make that this is somehow a sanctionable appeal? I would not have presented that. I think there should be a fair amount of give and take for ideas and arguments to be put forward, and I'm not moving for that at this point, nor would I at a subsequent point, given the status of the pleadings before this court. I just want to say I appreciate that. I really do. Are you formally withdrawing that request? Yes, I am. Anything else? Any other questions from the panel? Okay. Anything else, Mr. Lulich? Nothing. Thank you. Thank you. Mr. Fiathanov? Thank you, Justice Taylor. I just want to make two quick points with respect to damages and with respect to set-off. With respect to damages under Section 10, I would encourage the panel to have another look at Section 2b and 2c of the act. As I recall, 2b has to do with home sales, where if a dealer comes to somebody's residence, they get a three-day rescission period to get out of the contract. That's kind of analogous to voiding the contract under Section 12, and it has nothing to do with damages as such. It's just that the legislature has determined, in its wisdom, that a certain conduct mandates a certain response for whatever reasons. They're entitled to do that. And so when somebody comes to your house and subjects you to high-pressure, possibly, I mean, that was the impetus for this, high-pressure tactics, and you sign a contract to get them out of your house so that they don't bother you anymore. Within the three days, if you feel like not going through this, you're entitled to avoid the transaction. That is, to my mind, very analogous to Section 12, when they don't do certain disclosures, and the legislature said, well, if you don't, then it gets voided at the But I think that the return of a down payment, which he talks about, is not exactly damages. It's more of a restitution of some sort. So there are provisions of the Consumer Fraud Act, more than one, that involve wrongs that do not necessarily carry within themselves a potential for monetary damage, money damages, for lack of better words. And so I think that 12 is kind of like that. With respect to set-off, I would like to point out, well, you know, I am chicagolemonlord.com. I've appeared before two of you, but not Justice Breach of Warranty. It's a common procedural posture in any car case. When you have a breach of warranty, normally, consumers do not go berserk and return the car to the dealer and sue. Normally, they continue driving it. So it's part and parcel of car litigation. You sue for breach of warranty, they hit you back with a set-off, because in some of those instances, the mileage increase is very substantial. And therefore, in fairness, they're entitled to do it. There are various ways to argue against it. For example, they have to prove the value of each mile. Just saying the IRS rate is 50 cents per mile doesn't cut it, because it includes gas and oil. But if they do it correctly, they get some sort of an equitable chargeback, because otherwise it would be unfair. Same with here. It would be a completely run-of-the-mill pleading practice, if their lawyer knows what they're doing. So the Act talks about affirmative defenses, and I could see those cases that you're talking about that talk about it, the, you know, damages because of neglect or, you know, extraordinary wear and tear, and so forth. But how do we write out this standing provision in 10a that says a person who suffers actual damage has basically statutory standing to bring an action against the offender? That is, we know that the attorney general could go after MNK if they want to, but a private person is given statutory standing under 10a, and that is tied to, not just actual damage, but proximate cause. Yeah, well, yeah, I kind of, I anticipated that argument, and I kind of addressed it in the initial brief. It's a very interesting issue, because apparently the case law distinguishes between damage and damages, and those are two different things. I did not know, but damage, without the plural, is kind of a minimalistic harm, equivalent to standing, and clearly we do have standing here because that's what the legislature said. Now, it may be that because Section 12 was a later afterthought, one can say, well, there is a contradiction between those two provisions, so they are ambiguous, or they don't nullify each other, or whatever. But then there's also a line of cases that say when you have statutes that don't kind of jive together, the latest in time prevails. And I think I cited some cases, I found some cases that say quite clearly that that is the case. Now, clearly, 2L is the latest pronouncement, and it prevails if there is an ambiguity between the statute. And also, you know, it is a standalone provision. It has nothing to do with consumer fraud as such. It's a warranty statute. It has to do with cars and them not being repaired, and the second part of it is you have to disclose certain things correctly. So its placement in the Consumer Fraud Act, to my mind, is purely fortuitous. It could have been put anywhere else, and it would have the same effect. So I tend to think that the to bring Section 10 into this analysis is probably not helpful because the Section 2L being self-contained provides judges and courts everything they need to have in order to client who has identified no defect in this automobile and certainly no defect in the power train warranty or the power train component, your client has more remedies available to her than, say, for example, a consumer who didn't get the ads sticker, but 20 days later, the power train completely fails. That person gets no remedy, but your client who's been driving this car and seemingly without issues can just trade it back in and say, oh, I don't want it because you gave me the wrong sticker. No. Well, it's true that her problem did not arise within 15 days, 500 miles. That's the problem. But no, she did have a problem. Her car is no good. 3,000 miles later, something drastic happened. She's not driving. No, there's a defect. The problem is the question that I was faced with that defect clearly was not a 2L subject to 2L because of the passage of time. But it wasn't anyways, right? Because there's nothing in your complaint that says the power train ever failed. Even when you went to say the defect is we got a car without this warranty. And even if it was the power train, you didn't complain about it for six months. So the warranty would not have helped your client because any defect wasn't discovered for quite some time. That is true. I remember I referenced 3,000 miles. The defect appeared 3,000 miles later. You're correct. The power train defect was not present there during 15 days. And with respect to your real question, that is, does she have more rights than, say, a person who had a problem with power train 20 days later or 16 days later, but did not have the paper violations apparent on their face in the contract documents? The answer is yes. She does have more rights than the unfortunate person whose power failed on the 16th day. Not because something that she did, but because something they did. They violated the law. And she is in a capacity as a private attorney general is enforcing it and forcing them to comply with it. I am sure- The attorney general gets that privilege to do it. Your client, I don't see any harm to her because presumably she paid a little bit less for this car because she took it as is. Even though had clients come in within 15 days, I think she would have had a really good argument to say, it's day 13. My power train failed. You can't claim the warranty. Somebody would get protection under that. But your client's not in that situation. And so, again, your client either paid the same or less for an as-is car. She would have probably gotten the benefit of a 15-day warranty had she needed it. And so, again, I'm not seeing why she gets these better rights or a better remedy than the person who didn't get the as-is sticker. Because section 2L makes the provision voidable at her option. You're correct that, generally speaking, my former classmate Kwame is going to be the one who is going to be enforcing the consumer product. But in some instances, the legislature makes regular people to do their job. Because the attorney general, when the attorney general's office gets a complaint from somebody like Mr. Angora, and I see those a lot, they send a letter. And that is the extent of their enforcement. And their letter says, well, we can't help you contact private lawyer. So, yeah, the enforcement mechanism actually consists of two parts. For the big things, the attorney general does it. For little things, which their office cannot handle, we do. I'd like to ask one more question about the arbitration. Are there any additional facts besides the fact that this agreement is a form agreement and that the dealer is not a member of the AAA? Have you alleged any additional facts to support your consumer fraud claim in that count? Yes. If you look at the letters that are attached to the complaint, they took their time. They spoke out of two sides of their mouth. They knew there was an arbitration going on. Their client knew that the arbitration was going on. At a certain point, there was a message left on my client's answering machine, which clearly states that they knew the arbitration was asked for. They were asked multiple times to pay, and they failed every time. They basically jerked us around for some time. Time actually is compensable. It's also damages. They use this as a delay and as a means to make people go away. I suspect, although I do not know, they do it as a matter of their policy because, of course, nobody wants to be sued. So, you're saying that if you're allowed to proceed with this complaint, that you would seek discovery of other instances where a purchaser has sought arbitration? Oh, absolutely, because I think the documents indicate that that is the case. Okay, thank you. Any more questions? Yes. Exhibit F, which I think is the letter you're referring to, simply tells defendant the business did not previously submit its arbitration clause for review. Therefore, we're going to do this on an expedited basis. There's an additional fee for us to do this. So, once you register with us, then you're not going to be assessed as extra additional expense. But it doesn't say that, like, they were registered and then they got kicked out or anything of that matter. It gives them the opportunity to register right then and there and move forward. So, is it really correct to say, you know, like, is it shame on them for not registering at the time the contract was signed when they apparently could have done it immediately before arbitration commenced? Yeah, well, I'm not saying shame on them. Absolutely, they could have done it and they should have done it and we would have not been here. But they did. But you say they weren't in good standing. Is there anything in these letters that says they're not in good standing? In other words, I read that to impugn some negativity towards them. So, they were in and then they got kicked out. The letter just says they're not registered. That is not in good standing. That means that they're, well, I don't mean to impugn anything negative about it, merely to say that as things stood when we filed, the dealer could not and should not have imposed an arbitration clause upon us because by doing so, they kind of represented falsely that we will be able to arbitrate for free. We did that, they failed. They failed more than once. And so, I'm not ascribing that face to them. I'm merely stating that they are. But you are ascribing that face to them. It's a consumer fraud claim. You're alleging that this whole thing was fraudulent. It was intended to defraud the consumer that they had no intention of arbitrating with any of their customers. In the legal sense, it's unfairness under the Consumer Fair Act because arbitration is preferred. Okay, thank you. Any further questions? No. Thank you, members of the panel, for seeing us. I know that it's a standard procedure, so we appreciate being able to talk to you. Okay, thank you, Mr. Fiafunov and Mr. Lulich. We appreciate the zealous advocacy and the candor. And the matter is submitted and the court will issue a decision in due course. Have a good day. Thank you. Thank you very much.